UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOSE RUBEN RODRIGUEZ,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

18-CV-927-LJV
DECISION & ORDER

---

On August 20, 2018, the plaintiff, Jose Ruben Rodriguez, brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On April 30, 2019, Rodriguez moved for judgment on the pleadings, Docket Item 10; on September 30, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on October 21, 2019, Rodriguez replied, Docket Item 21.

For the reasons stated below, this Court grants Rodriguez's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.   ALLEGATIONS**

Rodriguez argues that the ALJ erred in three ways. Docket Item 10-1. He first argues that the ALJ improperly evaluated the medical opinions in the record, resulting in a Residual Functional Capacity ("RFC") finding that was not supported by substantial evidence. *Id.* at 18. Rodriguez next argues that the ALJ improperly evaluated Rodriguez's credibility. *Id.* at 26. And he finally argues that the Appeals Council improperly rejected new and material evidence. *Id.* at 27. This Court agrees that the ALJ erred and remands the matter to the Commissioner.

2

## II.     ANALYSIS

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). But an ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments." *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order). In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[ ] (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)).

3

Here, the ALJ gave less-than-controlling weight to the opinions of Rodriguez's five treating physicians. More specifically, the ALJ gave "some weight" to the opinions of Stuart T. Dorfman, M.D., and Michael C. Geraci, Jr., M.D., P.T.; "limited weight" to another of Dr. Geraci's opinions and to the opinions of Eric Roger, M.D., and Jafar Siddiqui, M.D.; and "little weight" to the opinion of Jerry Tracy III, M.D. Docket Item 8 at 24-25. But the ALJ failed to "explicitly" consider several of the *Burgess* factors before assigning less-than-controlling weight to these opinions.

Dr. Dorfman, a primary care provider, treated Rodriguez in January and February 2014. *See id.* at 335-38. At that time, Dr. Dorfman opined that Rodriguez "was restricted to lift[ing] and push[ing]/pull[ing] 20 pounds, with no overhead work[;] could occasionally bend, twist, and stoop[;] could stand, sit, and walk up to twenty minutes at a time[;] and . . . had [a] 'mild to moderate' or 'moderate' partial disability." *Id.* at 24. The only reason the ALJ gave for limiting the weight given to Dr. Dorfman's opinion was that "during this period, [Rodriguez] was working, and was otherwise advised regarding continued physical therapy." *Id.*

Dr. Roger, a neurosurgeon, treated Rodriguez in 2014 and 2016. *Id.* In April, July, and October 2014, Dr. Roger "assessed [Rodriguez] with a temporary impairment rating of '100%.'" *Id.* The ALJ "afforded limited weight" to these assessments "as the overall record does not indicate work-precluding limitations for all work." *Id.*

Dr. Geraci—a physician and physical therapist—treated Rodriguez from February to October 2014. *Id.* In February 2014, Dr. Geraci opined that Rodriguez "had a '75%' temporary impairment . . . and is 'totally disabled' from even 'light work.'" *Id.* In April 2014, Dr. Geraci found that Rodriguez had a '50%' temporary impairment[ ]

4

and is '100%' disabled from doing his work." *Id.* The ALJ stated that she gave these statements "limited weight, to the extent that other works exists." *Id.* But the ALJ did not explain how the fact "that other work exists" could possibly affect the weight given to these opinions—especially the opinion that Rodriguez could not perform "even 'light work,'" which is directly contrary to the ALJ's RFC determination. *See id.* at 17 (concluding that Rodriguez "has the [RFC] to perform a range of light work").

In October 2014, Dr. Geraci opined that Rodriguez "had a '50%' temporary impairment, and '50%' disability status." *Id.* at 24. The ALJ gave this opinion "some weight" because "[t]he overall record is consistent that [Rodriguez] has some back impairment, but is treated with medication" and that "he was to seek lighter work." *Id.*

Dr. Siddiqui treated Rodriguez in November 2015. *Id.* at 25. Dr. Siddiqui assessed Rodriguez as having a "75% temporary impairment." *Id.* The ALJ gave this assessment "limited weight, to the extent that other work exists." *Id.* In limiting the weight given to Dr. Siddiqui's opinion, the ALJ for some unexplained reason found it "[n]otabl[e]" that Rodriguez had been "advised to quit smoking, referred for chiropractic treatment, and would continue pain management." *Id.*

Dr. Tracy—a pain-management specialist—treated Rodriguez from "December 2014 to September 2016 and then again in March 2017." *Id.* In December 2014, Dr. Tracy found that Rodriguez "had '75%' temporary impairment and [that] he was '100% disabled to work.'" *Id.* Dr. Tracy subsequently found that Rodriguez "had '100%' temporary impairment in January 2015, and '75%' through March 2015." *Id.* In July 2016, Dr. Tracy completed a workers' compensation assessment and found that Rodriguez "could perform 'less than sedentary work.'" *Id.* Dr. Tracy further found that

"[f]rom January to September 2016 and March 2017, [Rodriguez] had '100%' disability related to a work injury." *Id.*

As noted above, the ALJ gave Dr. Tracy's opinions "little weight." *Id.* The ALJ reasoned that "Dr. Tracy, as [Rodriguez]'s pain management doctor, would be familiar with [Rodriguez]'s pain complaints, which appear to be the basis for [Dr. Tracy's] assessments," but "[n]o objective findings warranted more than conservative care." *Id.* Instead, "the overall record is reasonably consistent that [Rodriguez] has some back impairment, but is treated with medication; he was to seek lighter work." *Id.* at 26.

The ALJ did not "explicitly" consider several *Burgess* factors in analyzing these opinions. First, while the ALJ sometimes mentioned the times when the providers treated Rodriguez, the ALJ never addressed the length of time that they provided treatment. For example, the ALJ did not consider that Dr. Tracy had treated Rodriguez for more than two years. *See id.* at 25-26. The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Rodriguez's physicians'] treatment." *See Greek*, 802 F.3d at 375.

Nor did the ALJ "explicitly" consider "whether [each] physician is a specialist." *Id.* For example, although the ALJ mentioned in passing that Dr. Roger is a neurosurgeon and that Dr. Tracy treated Rodriguez for pain management, she did not discuss how either of these physicians' specialties might provide them with unique insight into Rodriguez's functioning. *See* Docket Item 8 at 24-26.

Moreover, while the ALJ rejected Rodriguez's treating physicians' opinions as not supported by the "overall" record evidence, she never specified to what evidence she was referring. *See, e.g.*, *id.* at 24 (rejecting Dr. Roger's opinion because "the overall

6

record does not indicate work-precluding limitations"); *id.* (rejecting Dr. Geraci's opinion because "[t]he overall record is consistent that [Rodriguez] has some back impairment, but is treated with medication; he was to seek lighter work"); *id.* at 26 (rejecting Dr. Tracy's opinion because "the overall record is reasonably consistent that [Rodriguez] has some back impairment, but is treated with medication; he was to seek lighter work"). And the ALJ certainly did not explicitly address "the amount of medical evidence supporting the[se] opinion[s]." *See Greek*, 802 F.3d at 375.

In fact, the reasons provided by the ALJ for limiting the weight given to the treating physicians' opinions are largely conclusory and sometimes puzzling. As noted above, for example, the ALJ gave limited weight to two of Dr. Geraci's opinions about what work Rodriguez could do "to the extent that other work exists." Docket Item 8 at 24; *see also id.* at 25 (same for Dr. Siddiqui). At best, that is a non sequitur. Similarly, the ALJ limited the weight given to Dr. Siddiqui's opinion that Rodriguez had a significant temporary impairment, explicitly noting that Rodriguez "was advised to quit smoking, referred for chiropractic treatment, and would continue pain management." *Id.* Why that was notable to her assessment the ALJ did not say. And the ALJ limited the weight given to several other opinions that Rodriguez was partially disabled because, *inter alia,* Rodriguez "was to seek lighter work." *See, e.g., id.* at 24 (Dr. Geraci); 26 (Dr. Tracy); *see also id.* at 25 (giving limited weight to the opinion of Bernard Beaupin, M.D., who "evaluated [Rodriguez] for workers [sic] compensation," because, *inter alia*, Rodriguez "was to seek lighter work"). Again, the ALJ did not explain how the direction to "seek lighter work" would somehow call into question the conclusion that Rodriguez was partially disabled.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good reasons' for assigning [less-than-controlling] weight" to Rodriguez's treating physicians' opinions.  *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran*, 362 F.3d at 32); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion").  The Court finds no such assurance here.

In particular, the ALJ appears to have used the opinion of Eric D. Schmitter, M.D.—an orthopedic surgeon who reviewed Rodriguez's records and served as a medical expert—as a primary reason for rejecting Rodriguez's treating physicians' opinions.  *See* Docket Item 8 at 26 (according "[s]ignficiant weight . . . to Dr. Schmitter's opinion since it is reasonably consistent with the overall record evidence").  But Dr. Schmitter never even laid eyes on Rodriguez, and the ALJ failed to give any good reasons why she credited his testimony over that of *five* treating physicians.  *See Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) ("A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis.").

Moreover, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel.'"  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).  To the extent the ALJ found the

opinions[2] of the treating physicians to be deficient, she was obligated to develop the record regarding Rodriguez's functional capacity during the period of disability.  *See Sobolewski v. Apfel,* 985 F. Supp. 300, 314 (E.D.N.Y. 1997) ("The record's virtual absence of medical evidence pertinent to the issue of plaintiff's RFC reflects the Commissioner's failure to develop the record, despite his obligation to develop a complete medical history.").

For example, the ALJ noted that some of the medical opinions were workers' compensation disability ratings.  Docket Item 8 at 24.  The ALJ "afforded [such opinions] little weight" because "[t]he workers [sic] compensation definition of disability is a different standard."  *Id.*  But even if they did not incorporate the correct jargon, the treating providers' opinions still had some relevance to Rodriguez's RFC.  And the ALJ therefore should have contacted each of these medical sources to learn what their

---

[2]  Some of these opinions arguably are not true medical "opinion" evidence.  *See* 20 C.F.R. § 404.1527(d)(1); 416.927(d)(1) ("Opinions on some issues, such as [an opinion that a claimant is 'disabled' or 'unable to work'], are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner . . . .").  But to the extent any of these doctors' opinions "are not medical opinions," the Commissioner had a duty to solicit actual opinions from these providers.  The Commissioner's own regulations reflect this duty, explaining that when a claimant is receiving or has received ongoing treatment from a qualified medical professional, the Commissioner "will request a medical source statement [from the claimant's treating source] about what [the claimant] can still do despite [her] impairment(s)."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted).  The Second Circuit has observed that the "plain text" of section 416.913(b)(6) "does not appear to be conditional or hortatory:  it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity.  The regulation thus seems to impose on the ALJ a duty to solicit such medical opinions."  *Tankisi*, 521 F. App'x at 33 (emphasis in original) (quoting former 20 C.F.R. § 416.913(b)(6)) (additional citation omitted).

9

opinions would mean using the Social Security Administration's disability standards, but she did not contact any of them.

For all those reasons, this Court remands the matter for reconsideration of the opinions of Rodriguez's treating physicians using the *Burgess* factors.[3]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Rodriguez's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:     August 11, 2020
           Buffalo, New York

                                          */s/ Lawrence J. Vilardo*
                                          LAWRENCE J. VILARDO
                                          UNITED STATES DISTRICT JUDGE

---

[3] The Court "will not reach the remaining issues raised by [Rodriguez] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").